8

THE STATE OF OHIO, APPELLEE, *v.* ESPARZA, APPELLANT.

[Cite as State *v.* Esparza (1988), 39 Ohio St. 3d 8.]

(No. 86-1689—Submitted May 23, 1988—Decided October 5, 1988.)

*Anthony G. Pizza,* prosecuting attorney, *Ruth Ann Franks* and *James D. Bates,* for appellee.

*Fuller & Henry* and *Barbara J. Stutz,* for appellant.

HOLMES, J. Appellant appeals his conviction and sentence below, citing fourteen propositions of law in support. For the reasons which follow, we affirm the judgment of the court of appeals and uphold the sentence of death.

In his first proposition of law, appellant contends the mandatory submission to the jury of the presentence investigation and mental examination reports which he requested pursuant to R.C. 2929.03(D)(1) denied him effective assistance of counsel. He also argues that the trial court erred in denying his request under R.C. 2929.024 for an independent psychologist to perform the mental examination, and that it erred in denying his requested continuance. We are not persuaded by appellant's claims. It is clear that these claims are based on the erroneous belief that the provisions of R.C. 2929.024 and 2929.03(D)(1) are intertwined, and require the mental examination to be performed by a psychiatrist or psychologist of the indigent defendant's choosing.[1] This result is not required by the statutory law or by the Constitution.

R.C. 2929.024 and 2929.03(D)(1) are wholly independent provisions. R.C. 2929.024 provides:

"If the court determines that the defendant is indigent and that investigation services, experts, or other services are *reasonably necessary* for the proper representation of a defendant charged with aggravated murder at trial or at the sentencing hearing, the court shall authorize the defendant's counsel to obtain the necessary services for the defendant, and shall order that payment of the fees and expenses for the necessary services be made in the same manner that payment for appointed counsel is made pursuant to Chapter 120. of the Revised Code. If the court determines that the necessary services had to be obtained prior to court authorization for payment of

---

[1] Appellant's only request for an independent expert pursuant to R.C. 2929.024 was coupled with his request for a mental examination pursuant to R.C. 2929.03(D)(1). His memorandum in support of the motion of May 3, 1984, states in part:

"Defendant represents that if defendant is convicted of the offense charged in the first count of the indictment and of the second specification thereto, defendant will request, pursuant to Section 2929.03(D)(1), Ohio Revised Code, a mental examination and contends that such an examination must be made by an independent psychologist."

the fees and expenses for the necessary services, the court may, after the services have been obtained, authorize the defendant's counsel to obtain the necessary services and order that payment of the fees and expenses for the necessary services be made as provided in this section." (Emphasis added.)

The services provided for by this statute are available to the indigent defendant solely for his own purposes in mounting a defense in a capital trial, since "justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which liberty is at stake." *Ake* v. *Oklahoma* (1985), 470 U.S. 68, 76. "[T]he State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. *This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking* or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right." (Emphasis added.) *Id.* at 83. R.C. 2929.024 assures the indigent capital defendant access to a competent expert, but does not guarantee such defendant the right to handpick an expert at the state's expense.

R.C. 2929.03(D)(1), on the other hand, applies to all capital defendants, whether indigent or not. Only on the request of the defendant will the court require a presentence investigation or mental examination to be prepared by not more than two psychologists or psychiatrists appointed in the manner specified in R.C. 2947.06. The statute requires that these reports be given to the court, the jury, and the parties, and that they shall be considered during sentencing. As we stated in *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 138, 22 OBR 203, 215, 489 N.E. 2d 795, 808, "the defendant decides whether to expose himself to the risk of potentially incriminating presentence investigations, including mental examinations. There is no constitutional infirmity in providing the defendant with such an option. Additionally, the jury should be privy to all information relevant to its task of deciding whether a defendant should be sentenced to life in prison or whether it should recommend that the defendant be put to death." Cf. *Estelle* v. *Smith* (1981), 451 U.S. 454. Appellant, having requested the presentence report and mental examination, cannot be heard to complain of its submission to the jury, since the statute so requires. *State* v. *Steffen* (1987), 31 Ohio St. 3d 111, 121-122, 31 OBR 273, 282-283, 509 N.E. 2d 383, 393-394. Appellant's ineffective assistance of counsel argument must similarly fail, as the decision to request the presentence report was clearly one of sound trial strategy. See *Strickland* v. *Washington* (1984), 466 U.S. 668.

As further support for the appointment of an independent psychiatrist of his own choosing, appellant contends the reports prepared by the court-appointed Court Diagnostic and Treatment Center were prepared without adequate guidelines and without adequate time. As a result, he alleges, the jury was told of the availability of statutory mitigating factors which he did not intend to establish, thus in effect presenting the jury with non-statutory aggravating circumstances. This argument is without merit. The jury was properly instructed on the aggravating circumstances and miti-

gating factors it was to consider. The reports submitted were prepared in substantially the same manner as the Court Diagnostic and Treatment Center had done in prior cases. Appellant was not entitled to a "rebuttal" presentence investigation and mental examination prepared by a second psychologist or psychiatrist of his own choosing also at state expense. As we made clear in *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 23, 23 OBR 13, 19, 490 N.E. 2d 906, 913, "[a]ll that due process requires with respect to post-conviction reports is giving the defendant a chance to rebut any alleged inaccuracies. See *Gregg* v. *Georgia* (1976), 428 U.S. 153, 189, fn. 37; *United States* v. *Papajohn* (C.A. 8, 1983), 701 F. 2d 760, 763; and *Farrow* v. *United States* (C.A. 9, 1978), 580 F. 2d 1339, 1360."

Here, the record reflects that defense counsel not only had the opportunity but took the opportunity to impeach the reliability and accuracy of the report during cross-examination of its authors, Drs. Cassell and Seman. Counsel's questioning carefully brought out the short time (two days) in which the report was prepared as well as its alleged incompleteness (*e.g.,* using the juvenile court's family file instead of personally interviewing family members). Despite these claimed shortcomings, appellant received thorough and appropriate psychological testing from two independent, competent psychologists.

In sum, we hold that a court, when requested by a defendant to order a presentence investigation or to appoint a psychologist or psychiatrist to conduct a mental examination pursuant to R.C. 2929.03(D)(1) and 2947.06, is not required by the Constitution or the provisions of R.C. 2929.024 to appoint a psychiatrist or psychologist of the defendant's own choosing. Rather, ad-

ditional expert services must be provided to an indigent defendant only if the court determines, within its sound discretion, that such services "are reasonably necessary for the proper representation of a defendant" at the sentencing hearing. R.C. 2929.024; *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 193-194, 15 OBR 311, 335-336, 473 N.E. 2d 264, 291-292. No request for such additional services was made herein.

Appellant's final contention under his first proposition of law, that his motion for continuance prior to the sentencing hearing should have been granted, is also without merit. As the request was indefinite as to duration and vague as to its purpose, its denial was not an abuse of discretion.

In his second proposition of law, appellant contends he was denied the right to place all relevant evidence in mitigation before the sentencing jury when the trial court excluded the admission of a pretrial letter he had written to his former foster family. Although it is well-established that a defendant must be given great latitude in the presentation of evidence supporting mitigating factors, R.C. 2929.04 (C), *Lockett* v. *Ohio* (1978), 438 U.S. 586, 604, neither this court nor the United States Supreme Court has limited "the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Lockett, supra,* fn. 12; *State* v. *Jenkins, supra,* at 189, 15 OBR at 332, 473 N.E. 2d at 288. Inasmuch as the Rules of Evidence apply to the sentencing phase of a capital trial, see *Jenkins, supra,* at 171, 15 OBR at 317, 473 N.E. 2d at 275; *State* v. *Glenn* (1986), 28 Ohio St. 3d 451, 458, 28 OBR 501, 507, 504 N.E. 2d 701, 708, the trial court properly excluded the letter which was not

properly authenticated under Evid. R. 901.

Moreover, the proffered letter had no bearing on appellant's prior record, or the circumstances of his offense. The letter was offered to show appellant's continuing ties to his foster family. However, the circumstances under which the letter was written, while appellant was incarcerated on the present charges three weeks prior to the original trial date, indicate a lack of trustworthiness. Due to the likelihood that this letter was written for the purpose of communicating a statement to the jury, its exclusion as irrelevant was proper. Moreover, exclusion of the letter was harmless given the other testimony of appellant's continued family contacts which was presented to the jury by appellant's foster father. Cf. *People* v. *Harris* (1984), 36 Cal. 3d 36, 201 Cal. Rptr. 782, 679 P. 2d 433. Appellant's second proposition of law is not well-taken.

In his third, fourth and tenth propositions of law, appellant challenges jury instructions given at the sentencing hearing that the jury's recommendation of a death sentence would not be binding on the court, that the jury should disregard sympathy in its consideration of the evidence, and that unanimity of the jurors was required in order to recommend a life sentence. All of these challenges were similarly raised and rejected by this court in prior cases, and are not well-taken here. *Jenkins, supra,* paragraphs three and six of the syllabus; *State* v. *Williams, supra,* at 21-22, 23 OBR at 19, 490 N.E. 2d at 913; *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 176, 17 OBR 414, 416, 478 N.E. 2d 984, 988 (*Rogers I*) reversed on other grounds (1987), 32 Ohio St. 3d 70, 512 N.E. 2d 581 (*Rogers III*); *State* v. *Buell, supra,* at 142-144, 22 OBR at 219-220, 489 N.E. 2d at 811-812. See, also, *California* v.

*Brown* (1987), 479 U.S. 538 (instruction that jurors not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, or public opinion or feeling in penalty phase of capital murder trial held not to violate Eighth or Fourteenth Amendments).

In his fifth proposition of law, appellant argues that the trial court erred in admitting during the guilt phase of the trial the testimony of a cellmate to the effect that while appellant was being held for another crime, he was arrested on the instant charges. The state argues appellant failed to object at trial and has thus waived the issue here. *State* v. *Scott* (1986), 26 Ohio St. 3d 92, 26 OBR 79, 497 N.E. 2d 55. Even if the issue was not waived, the cellmate's reference to appellant's prior incarceration was brief and not prejudicial. We note the trial court in effect granted a portion of appellant's motion *in limine* on this issue, ruling that although evidence that the conversations between appellant and the cellmate took place in the Lucas County Jail could be admitted, no mention could be made of why appellant was incarcerated or the dates of the conversations. Any error which this limited disclosure may have caused was harmless, given the overwhelming evidence of appellant's guilt beyond a reasonable doubt. *State* v. *Ferguson* (1983), 5 Ohio St. 3d 160, 5 OBR 380, 450 N.E. 2d 265, at fn. 5; *Chapman* v. *California* (1967), 386 U.S. 18.

In propositions of law six and thirteen, appellant challenges the constitutionality of various aspects of Ohio's death penalty statute. These challenges have been raised in substantially identical form in several of our prior cases and rejected therein: *Jenkins, supra; State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d

768; *Rogers I, supra; State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 19 OBR 318, 484 N.E. 2d 140; *State* v. *Martin* (1985), 19 Ohio St. 3d 122, 19 OBR 330, 483 N.E. 2d 1157; *Buell, supra; State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922. They are similarly not well-taken here. We note that appellant's claim that mere outweighing of aggravating circumstances over mitigating factors, as opposed to substantial outweighing, is arbitrary and unconstitutional, is simply another way of arguing that the state has the burden of proving the absence of mitigating factors. This argument was raised and rejected in *Jenkins, supra,* at 171, 15 OBR at 317, 473 N.E. 2d at 275.

In proposition of law number seven, appellant challenges for the first time on appeal the venire from which his jury was drawn, alleging voter registration lists were used in which Hispanics were significantly underrepresented. In addition to the issue of waiver, *Scott, supra,* the use of voter registration lists to select qualified jurors has consistently been upheld by this court. *State* v. *Johnson* (1972), 31 Ohio St. 2d 106, 60 O.O. 2d 85, 285 N.E. 2d 751, paragraph two of the syllabus; *State* v. *Strodes* (1976), 48 Ohio St. 2d 113, 2 O.O. 3d 271, 357 N.E. 2d 375, vacated on other grounds (1978), 438 U.S. 911; *State* v. *Puente* (1982), 69 Ohio St. 2d 136, 23 O.O. 3d 178, 431 N.E. 2d 987. Appellant has demonstrated neither an unfair representation of Hispanics on Lucas County juries, nor that such alleged underrepresentation resulted from a systematic exclusion by the state of that group. *Puente, supra,* at 138, 23 O.O. 3d at 179, 431 N.E. 2d at 989; *Duren* v. *Missouri* (1979), 439 U.S. 357.

Appellant's eighth proposition of law asks this court to expand its statutorily mandated proportionality review to include all capital cases, whether or not a sentence of death was ultimately imposed. We recently rejected such a request in *State* v. *Steffen, supra,* at paragraph one of the syllabus; see, also, *Jenkins, supra,* at 209, 15 OBR at 350, 473 N.E. 2d at 304. After reviewing those cases in which the death penalty has in fact been imposed, we hold that the sentence of death in this case is neither excessive nor disproportionate to the penalty imposed in similar cases involving murder coupled with robbery. *Jenkins, supra; Williams, supra*; R.C. 2929.05.

In his ninth proposition of law, appellant argues the state unconstitutionally exercised its peremptory challenges to remove six prospective jurors who were generally opposed to, or expressed reservations concerning, the death penalty. No objection was made during trial on this issue, which was raised for the first time on appeal. *Scott, supra.* Notwithstanding the resulting waiver of this issue, however, we find no merit to appellant's arguments.

It is well-established that the Equal Protection Clause forbids the state's use of peremptory challenges to purposefully exclude "any identifiable group in the community which may be the subject of prejudice." *Swain* v. *Alabama* (1965), 380 U.S. 202, 205; *Hernandez* v. *Texas* (1954), 347 U.S. 475; *Avery* v. *Georgia* (1953), 345 U.S. 559; *Batson* v. *Kentucky* (1986), 476 U.S. 79. However, the prosecutor is entitled in any given case to a presumption that he "is using the State's challenges to obtain a fair and impartial jury to try the case before the court," *Swain, supra,* at 222, which may be rebutted by establishing the prosecutor's peremptory challenges resulted in systematic exclusion of such identifiable group from jury panels. *Swain, supra,*

at 224; see, also, *Batson, supra,* at 87-88. In *Lockhart* v. *McCree* (1986), 476 U.S. 162, 176-177, the United States Supreme Court held· that prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors in a capital case, *i.e.,* "Witherspoon-excludables," are not distinctive, identifiable groups for the requirement that a jury represent a fair cross-section of the community. The court thus upheld the practice of "death qualifying" a jury. If those persons who unequivocally oppose the death penalty do not constitute an "identifiable group" for fair cross-section purposes, even less so do those persons, like the six jurors identified by appellant here, who have some reservations and concerns about the death penalty but state that they are able to put those feelings aside and follow the instructions of the trial court. "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Swain, supra,* at 220. " '[I]t must be exercised with full freedom, or it fails at its full purpose.' " *Lewis* v. *United States* (1892), 146 U.S. 370, 378. Appellant's ninth proposition of law is not well-taken.

In proposition of law eleven, appellant asserts the state failed to prove that he intended to kill Melanie Gerschultz, as required by R.C. 2903.01 (D). We cannot agree.

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 132, at syllabus. The record shows appellant en-

tered the carryout for the express purpose of committing a robbery. He carried a loaded semi-automatic handgun which requires cocking before the first bullet from the magazine enters the firing chamber, making it able to fire. He ordered Gerschultz to the cash register, obtained the money,· and while standing near or exiting through the entrance, he fired a shot which passed through the Plexiglas, striking Gerschultz in the neck. The fact that the hole in the Plexiglas was four feet, seven and one-half inches from the floor and that Gerschultz was five·feet, five inches tall indicates he fired the shot directly at her, and considerably weakens his argument that he meant to fire only a warning shot in her direction. It is well-established that "where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill: *State* v. *Clark* (1978), 55 Ohio St. 2d 257, 9 O.O. 3d 257, 379 N.E. 2d 597, syllabus; *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, 10 O.O. 3d 78, 381 N.E. 2d 637." *State* v. *Jester* (1987), 32 Ohio St. 3d 147, 152, 512 N.E. 2d 962, 968. Appellant's conviction is not contrary to the manifest weight of the evidence.

Proposition of law twelve alleges that the trial court failed to follow R.C. 2929.03 when it weighed the aggravating circumstances against the mitigating factors. This argument is wholly without merit. Our review of the trial court's opinion reveals the court carefully considered all the evidence presented in mitigation, including appellant's age, mental capacity and his chaotic childhood, and found this evidence to be of little mitigating value. It is clear the court properly considered only one aggravating spe-

cification, the aggravated robbery, and its consideration of the "nature and circumstances" of that offense was required by R.C. 2929.03(D)(1) and (3). Following R.C. 2929.03(D) and (F), the trial court upheld its duty to separately weigh the aggravating circumstances against the mitigating factors.

Finally, in his fourteenth proposition of law, appellant argues that he was denied his constitutional right to effective assistance of trial counsel. He cites several instances of alleged ineffectiveness, the cumulative effect of which, he contends, denied him a fair trial and substantial justice.

Specifically, he points to trial counsel's failure to object to the jury venire (relating to proposition of law seven), their failure to object to the testimony of appellant's cellmate (relating to proposition of law five), their failure to properly authenticate the letter written by appellant to his former foster family (relating to proposition of law two), and their submission of a detailed juvenile court "family file" concerning appellant's history, character and background. Given our determination above of the issues involved in propositions of law two, five and seven; given that the record amply reflects the effort of trial counsel to ensure that a qualified, unbiased jury was empaneled and their successful efforts to significantly limit the testimony of appellant's cellmate; and given the sound trial strategy in admitting the family file as appellant's most persuasive argument against the imposition of the death penalty,[2] appellant has failed to establish "a substantial violation of an essential duty owed by the defense counsel to the defendant." *State* v. *Cooperrider* (1983), 4 Ohio St. 3d 226, 228, 4 OBR 580, 582, 448 N.E. 2d 452, 454. Even if appellant's trial counsel's conduct were somehow deficient, appellant has failed to show how he was prejudiced by such conduct. *Id.*; see, also, *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 358 N.E. 2d 623, vacated in part on other grounds (1978), 438 U.S. 910; *Strickland* v. *Washington, supra.* Appellant's trial counsel presented a thorough, diligent defense, and thus the fourteenth proposition of law is not well-taken.

We now independently weigh the aggravating circumstances against the mitigating factors presented below. R.C. 2929.05. The sole statutory aggravating specification was the killing of Gerschultz during an aggravated

---

[2] In his closing arguments to the jury during the sentencing phase of the trial, defense counsel stated the following:

"Read what is in this family file. Read about Greg Esparza. You heard about him. There is a lot of information for you.

"There is bad information in there. There is information about his past criminal conduct, information about his delinquent conduct, information about running away and having difficulty with rules and difficulty with certain people in his life. There is a common thread that runs through that, though. I think you will see that.

"When that common thread has to do with what happened to him at age 7, he didn't have any control over what was happening to him, and he was removed from a home which, while it wasn't a nurturing home, was a family setting, and I think you will, as you go through there, you will see how important family was to him, how important his family was to him, the family that I think you will see he perceived as rejecting him.

"And I believe that when you weigh all of those factors, when you weigh his life, you will determine that mercy requires and that the mitigating factors require that your decision be a recommendation of life, not death. Thank you."

robbery. Appellant entered the carry-out under disguise, pointed a gun at two employees, demanded money, obtained $110 from the cash register, and fired his weapon in the direction of the victim's head, striking her in the neck. Appellant was twenty years old at the time of the crime, but his age is non-mitigating, given his prior delinquent behavior involving theft and burglary extending back to 1975, and given the deliberately planned crime herein. Appellant was diagnosed as having an antisocial personality disorder, but was able to appreciate the criminal nature of his crime. He grew up in a chaotic and disruptive environment, being both abused and neglected, but he alone of eleven siblings developed serious criminal behavior.

Based on these considerations, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt, and thus affirm appellant's conviction and sentence of death.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER and DOUGLAS, JJ., concur.

WRIGHT and H. BROWN, JJ., dissent.

LOCHER, J., concurring. I agree with the bulk of the majority's analysis and its conclusion that the conviction and sentence should be affirmed. I write separately with regard to appel-

lant's proposition of law twelve. That proposition of law alleges that the trial court failed to properly weigh the aggravating circumstances against the mitigating factors.

However, as the majority opinion observes: "* * * the trial court's opinion reveals the court carefully considered all the evidence presented in mitigation, including appellant's age, mental capacity and his chaotic childhood, and found this evidence to be of little mitigating value."

It is also obvious that the trial court properly weighed the sole statutory aggravating circumstance, the aggravated robbery, against the mitigating factors, and *did not* weigh the "nature and circumstances" of that offense as separate aggravating circumstances against the mitigating factors. Thus, the trial court's opinion was in accord with this court's recent pronouncement in *State* v. *Davis* (1988), 38 Ohio St. 3d 361, 528 N.E. 2d 925.

Therefore I concur.

H. BROWN, J., dissenting. I believe that the majority's interpretation of R.C. 2929.03(D)(1) is unconstitutional, forces ineffective assistance of counsel, violates the statutory capital sentencing scheme in Ohio and, in the present case, results in a denial of the defendant's rights under the Fifth Amendment.

I

When the trial court denied defense counsel's motion for appointment of an independent psychologist-expert,[3] counsel was faced with one of

---

[3] The trial court denied defense counsel's motion for appointment of an independent psychologist-expert because "* * * Section 2929.024 * * * [does] not extend to the hiring of independent psychiatrists or psychologists for the use of the Defendant in mitigation proceedings." The court's ruling contains no finding that

the requested expert services were not reasonably necessary for the proper representation of the defendant and thus was in error. See R.C. 2929.024 and *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 15 OBR 311, 473 N.E. 2d 264, paragraph four of the syllabus.

two choices. Pursuant to R.C. 2929.03 (D)(1), counsel could request a mental examination and presentence investigation report to uncover evidence concerning defendant's character, background, mental capacity or other factors in mitigation. Counsel's other option was to abandon possible discovery of some mitigating factors.

In a criminal case, defense counsel has a duty to investigate "* * * the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction." 1 A.B.A. Standards for Criminal Justice (1986 Supp.) 4.53, Standard 4-4.1. It is only after thorough investigation and discovery of facts relevant to potential mitigating factors that counsel can make an informed decision concerning what evidence will be presented to the sentencer. Thus, counsel's decision to request the reports and obtain updated information was warranted, based upon defendant's chaotic upbringing and previous psychological reports which reached conflicting conclusions about defendant's mental functioning.

But there is a Catch 22. Once counsel makes a request under R.C. 2929.03(D)(1) (according to the majority), anything and everything in the resulting reports must go to the jury, even though defense counsel cannot possibly know, when the request is made, what prejudicial matter will be found in the reports. The majority's view of R.C. 2929.03(D)(1) opens wide the evidentiary door, allowing into evidence *any* information contained in the reports regardless of relevancy or prejudice. Under this interpretation, control over what is placed before the jury is taken out of the hands of the trial judge and turned over to psychologists, social workers and probation department employees.

In the instant case, the reports contained information which was prejudicial to defendant, rebutted the existence of mitigating factors not raised by defendant and introduced into evidence information which the state could not have otherwise placed before the jury.

The reports refer to statements by the defendant that he was an alcohol abuser, had used illicit drugs including heroin and Dilaudid (a morphine derivative), had never been employed, had set fires for amusement and had a long history of juvenile adjudications and criminal convictions. The presentence investigation report stated the probation officer's belief that defendant's prior criminal arrest record had "* * * escalated rapidly both in frequency and assaultiveness" and that the defendant may be viewed as "* * * at least a moderate physical threat to the community" who had not been deterred from crime by incarceration or probation. None of this would have been admissible, absent the majority's interpretation of R.C. 2929.03(D)(1).

The most serious error which occurred when the jury was required to consider the information in these presentence reports was this: the state was allowed to rebut mitigating factors which had not been raised by defendant. Under Ohio's statutory scheme, a defendant has the burden of going forward with evidence of any factors in mitigation of the imposition of the sentence of death and the court is required to give defendant "* * * great latitude in the presentation of evidence of * * * factors in mitigation of the imposition of the sentence of death." See R.C. 2929.03(D)(1) and 2929.04(C). The Eighth and Fourteenth Amendments require that the sentencer not be precluded from considering, as a *mitigating factor,* any aspect of a defendant's character or record and the circumstances of the offense *that the defendant proffers* as a basis for punishment less than death.

*Lockett* v. *Ohio* (1978), 438 U.S. 586, 604.

The right to present mitigating evidence belongs to the defendant. If the defendant fails to present evidence concerning the factors listed as mitigating in R.C. 2929.04(B), no comment may be made upon the omitted factors. *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 289, 528 N.E. 2d 542, 557. It follows that evidence concerning mitigating factors not raised by a defendant may not be given to the jury.

In this case, defendant elected not to raise the mitigating factors listed in R.C. 2929.04(B)(1), (2), (5) and (6). The trial court properly refrained from instructing the jury on these factors in its oral charge. However, the court also instructed the jury that they *must* consider the written presentence investigation and psychological reports in determining defendant's sentence. These reports contained statements rebutting the existence of the potentially mitigating factors listed in R.C. 2929.04(B)(1), (2), (5) and (6). Indeed, the presentence investigation report listed each mitigating factor of R.C. 2929.04(B)(1) through (7) in separate paragraphs. Thus, the jury was given the conclusions of Jean C. Meyer, Unit Supervisor, and Lindsey Whitehead, Division Supervisor, as to whether each of the statutory mitigating factors was present in the case.[4] Since the defendant chose not to proffer evidence concerning the above factors, evidence concerning these factors should not have been placed before the jury. Further, the prosecuting attorney commented on the presentence report statements in his closing argu-

ment and called the court-appointed psychologist as a witness. Allowing the state to rebut mitigating factors which were not raised by the defendant violates Ohio's statutory sentencing scheme.

It also transforms the nonexistence of mitigating factors into aggravating circumstances not specifically enumerated in R.C. 2929.04(A)(1) through (8). Submission to the jury of nonstatutory aggravating factors in the penalty phase of a capital trial is not permitted. *State* v. *Johnson* (1986), 24 Ohio St. 3d 87, 24 OBR 282, 494 N.E. 2d 1061. It tips the scales in favor of death and does violence to the principle that the imposition of a sentence of death cannot be the result of arbitrary or capricious sentencing. *Gregg* v. *Georgia* (1976), 428 U.S. 153; *Proffitt* v. *Florida* (1976), 428 U.S. 242; *Furman* v. *Georgia* (1972), 408 U.S. 238.

## II

The majority did not need to interpret R.C. 2929.03(D)(1) so as to make it unconstitutional.

R.C. 2929.03(D)(1) states in part:

"* * * The court, and *the trial jury* if the offender was tried by a jury, *shall consider any report prepared pursuant to this division* and furnished to it and any evidence raised at trial *that is relevant* to the aggravating circumstances the offender was found guilty of committing or *to any factors in mitigation of the imposition of the sentence of death* * * *." (Emphasis added.)

Factors in mitigation of the imposition of the sentence of death are only those factors raised by the defendant.

---

[4] With all due respect, it is the jury, and not such personages as Jean C. Meyer and Lindsey Whitehead, which is charged with the responsibility to evaluate mitigating

factors in a capital case. And it is the trial judge who should decide what evidence may be considered by the jury.

Since the reports contained statements which were not relevant to the mitigating factors raised by defendant, those parts of the report should not have been considered by the jury.

### III

Even if R.C. 2929.03(D)(1) is read as the majority urges, defendant's Fifth Amendment privilege against compelled self-incrimination was violated because he was not advised before the psychological examination that he had the right to refuse to answer questions and that his statements could be used *against* him at the capital sentencing proceeding. *Estelle* v. *Smith* (1981), 451 U.S. 454; *Miranda* v. *Arizona* (1966), 384 U.S. 436. Although defendant herein requested the exam and the petitioner in *Smith, supra,* did not, defendant was equally entitled to *Miranda* warnings because he did not proffer the report and was not personally made aware that the report would be used against him to support a sentence of death.

The psychological report states, "Prior to beginning the examination of Mr. Esparza, I explained to him the purpose of the evaluation and the lack of confidentiality inherent in the evaluation process." This statement is inadequate under *Miranda* because the examiner failed to warn defendant that his statements could be used against him and that he had the right to refuse to answer questions. "Just as the Fifth Amendment prevents a criminal defendant from being made ' "the deluded instrument of his own conviction," ' * * * it protects him as well from being made the 'deluded instrument' of his own execution." (Citations omitted.) *Smith, supra,* at 462. The Fifth Amendment privilege is directly involved in the instant cause because the defendant exercised his right not to testify and the state used his disclosures against him. If, as the majority contends, the statements made by a criminal defendant during mental examinations may be used against the defendant in support of the death penalty, *Miranda* requires that the defendant must be constitutionally warned.

For the foregoing reasons, I respectfully dissent.

WRIGHT, J., concurs in the foregoing dissenting opinion.