OPINION
Appellant, Jose T. Loza, appeals from a decision of the Butler County Court of Common Pleas that denied his petition for postconviction relief.
In January 1991, Loza shot and killed four members of the family of his pregnant girlfriend, Dorothy Jackson. Loza shot the victims in the head at close range while they slept in their home in Middletown, Ohio. The victims were Jackson's mother, Georgia Davis; her brother, Gary Mullins; and her two sisters, Cheryl (Mullins) Senteno and Jerri Luanna Jackson.
On October 31, 1991, a jury returned a verdict finding Loza guilty of four counts of aggravated murder. Loza was subsequently sentenced to death for the aggravated murders of Mullins, Senteno, and Jackson. In addition, Loza was sentenced to thirty years to life imprisonment for the aggravated murder of Davis and a threeyear term of actual incarceration for a firearm specification. The trial court ordered the life and the three-year firearm sentences to be served consecutively to Loza's death sentences. Loza's conviction and death sentences were affirmed on appeal. State v. Loza (1994), 71 Ohio St.3d 61; State v. Loza (Apr. 19, 1993), Butler App. No. CA91-11-198, unreported. The United States Supreme Court denied appellant's writ of certiorari. Loza v. Ohio (1995), U.S., 115 S.Ct. 1983.
On November 27, 1995, Loza filed a petition for postconviction relief, a motion for discovery, and a motion requesting review of prosecutorial and police files. On December 7, 1995, Loza filed a motion for discovery on the discriminatory enforcement of the death penalty in Butler County, Ohio. The prosecutor also filed a motion to dismiss Loza's petition for postconviction relief on December 7, 1995. On September 24, 1996, the trial court issued a decision that denied all of Loza's motions and dismissed his petition for postconviction relief. On appeal, Loza assigns thirteen assignments of error. For purposes of analysis, the assigned errors will be discussed where appropriate.
In his first assignment of error, Loza contends that he is entitled to postconviction relief because his rights under the Vienna Convention on Consular Relations were violated. The Vienna Convention requires an arresting government to notify a foreign national who has been arrested, imprisoned or taken into custody or detention of his right to contact his consul.[1] Vienna Convention on Consular Relations, April 24, 1963, TIAS 6820, 21 U.S.T. 77. Loza, a citizen of Mexico, argues that he is entitled to postconviction relief because the police never informed him that he had a right to contact the Mexican Consul.
Pursuant to R.C. 2953.21(A)(1), postconviction relief is dependent upon a showing that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." Thus, a petitioner is not entitled to postconviction relief unless he shows a violation of rights that are constitutional in dimension, which occurred at the time that he was tried and convicted. State v. Powell (1993), 90 Ohio App.3d 260.
Pursuant to the Supremacy Clause of the United States Constitution, federal statutes and treaties are the supreme law of the land.[2] Thus, a treaty has been deemed to be the substantial equivalent of a federal statute. See, e.g., Boos v. Barry (1988), 485 U.S. 312, 108 S.Ct. 1157; Reid v. Covert (1957),354 U.S. 1, 17-18, 77 S.Ct. 1222, 1230-31. However, rights under a treaty and rights under a federal statute are not the equivalent of constitutional rights. Id.; see, also, Waldron v. I.N.S. (C.A. 2, 1993), 17 F.3d 511, 518 (holding that rights under Vienna Convention are not the equivalent of fundamental rights, such as the right to counsel). Therefore, we agree with the following reasoning of the United States Court of Appeals for the Fourth Circuit:
 Even if the Vienna Convention on Consular Relations could be said to create individual rights (as opposed to setting out the rights and obligations of signatory nations), it certainly does not create constitutional rights. Although states may have an obligation under the Supremacy Clause to comply with the provisions of the Vienna Convention, the Supremacy Clause does not convert violations of treaty provisions (regardless of whether those provisions can be said to create individual rights) into violations of constitutional rights. Just as a state does not violate a constitutional right merely by violating a federal statute, it does not violate a constitutional right merely by violating a treaty.
Murphy v. Netherland (C.A. 4, 1997), 116 F.3d 97, 100.
Although the police should have complied with the Vienna Convention and informed Loza that he had the right to contact the Mexican Consul, Loza's rights under the treaty are not constitutional in dimension. Accordingly, the trial court properly found that Loza's claim did not constitute a substantive ground that entitled him to postconviction relief, and Loza's first assignment of error is overruled.
In his tenth assignment of error, Loza contends that the trial court erred by granting the prosecutor's motion to dismiss where the state failed to satisfy the burden for a Civ.R. 12(B)(6) dismissal. Although the Rules of Civil Procedure generally apply to postconviction proceedings, the specific procedures of R.C.2953.21 take priority where they conflict with the Civil Rules. State v. Lawson (1995), 103 Ohio App.3d 307, 313. In rendering a dismissal pursuant to Civ.R. 12(B)(6), a court is limited to a review of the pleadings, and a dismissal is only warranted if it appears beyond doubt from the complaint that a plaintiff can prove no set of facts that would entitle him to recovery. State v. Nichols (1984), 11 Ohio St.3d 40; O'Brien v. University Community Tenants Union (1975), 42 Ohio St.2d 242, syllabus.
In contrast to a Civ.R. 12(B)(6) dismissal, a petition for postconviction relief may be dismissed without a hearing if a petitioner fails to submit evidentiary material that sets forth sufficient operative facts to demonstrate substantive grounds for relief. State v. Jackson (1980), 64 Ohio St.2d 107, 110; State v. Hackney (Jan. 13, 1997), Clermont App. No. CA96-08-071, unreported. Further, unlike Civ.R. 12(B), R.C. 2953.21(C) explicitly requires the trial court to consider evidentiary materials beyond the pleadings to determine whether there are substantive grounds for relief that warrant a hearing.[3]
Therefore, the trial court properly found that dismissal of Loza's petition for postconviction relief was not governed by Civ.R. 12(B)(6). See State v. Franklin (Jan. 25, 1995), Hamilton App. No. C-930760, unreported. Accordingly, Loza's tenth assignment of error is overruled.
In his eleventh assignment of error, Loza contends that the trial court improperly dismissed several of his claims based upon the doctrine of res judicata. Loza argues that res judicata is an affirmative defense that cannot be raised in a motion to dismiss pursuant to Civ.R. 12(B).
It is well-established that a court may properly dismiss a petition for postconviction relief without a hearing based upon the res judicata doctrine where a petitioner, represented by counsel, could have raised his allegations, either at trial or on direct appeal. State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus; Lawson, 103 Ohio App.3d at 315. Further, since R.C. 2953.21(D) specifically provides that a prosecuting attorney may respond to a petition for postconviction relief by a motion, rather than an answer,[4] a prosecuting attorney may assert the defense of res judicata in a motion to dismiss. Lawson at 313; State v. Davis (Sept. 30, 1996), Butler App. No. CA95-07-124, unreported. Accordingly, the trial court properly dismissed several of Loza's claims based upon the res judicata doctrine and his eleventh assignment of error is overruled.
In his second assignment of error, Loza contends that the trial court erred by dismissing several of his claims which alleged that he received ineffective assistance of counsel during his trial. In order to establish a claim of ineffective assistance of counsel, it must be shown that an attorney's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064. In postconviction proceedings, a petitioner bears the initial burden of submitting evidentiary materials containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness. Jackson,64 Ohio St.3d at 111. Pursuant to the res judicata doctrine, a petition for postconviction relief may be dismissed where a petitioner, represented by new counsel on direct appeal, could have raised the ineffective assistance of trial counsel claim on direct appeal without resort to evidence outside the record. State v. Lentz (1994), 70 Ohio St.3d 527, syllabus.
Loza argues that his trial counsel was ineffective for failing to file a pretrial motion to suppress Loza's confession on the grounds that it was involuntary. Loza was appointed different counsel for his trial and appellate proceedings. Further, the record on direct appeal reflected the circumstances surrounding Loza's confession and the lack of a motion to suppress the confession on the grounds that it was involuntary.[5]
Therefore, since Loza could have raised this ineffectiveness claim on direct appeal without resort to evidence outside the record, this claim was barred by the doctrine of res judicata.
Loza also argues that his trial counsel was ineffective for failing to present cultural evidence. Loza claims that a cultural expert would have provided evidence as to why Loza's Hispanic culture influenced him to "protect" his unborn child and Jackson by confessing to the murders. In support of this claim, Loza submitted an affidavit from Susan Keefe, a professor of anthropology, in which she stated that "it would be consistent with Mr. Loza's Mexican values to try and protect Dorothy and the baby after his arrest by confessing to the crimes."
The record contains evidence that Loza's trial counsel offered evidence that Loza confessed to "protect" Jackson and his unborn child during the guilt and mitigation phases of Loza's trial. During the guilt phase of the trial, Loza's trial counsel sought to introduce the testimony of Dr. Roger Fisher, a clinical psychologist. The proffered testimony was that Loza confessed because "his background, psychological makeup, and his personal code of conduct required that he not snitch and that he protect Dorothy." Loza, 71 Ohio St.3d at 65-66. The trial court excluded this testimony during the guilt phase of the trial and the Ohio Supreme Court upheld this ruling on direct appeal. Id. However, Dr. Fisher's testimony was allowed during the mitigation phase of the trial. Since Keefe's "cultural evidence" is merely cumulative of or alternative to Dr. Fisher's testimony, Loza has failed to establish ineffective assistance of counsel. See Lawson,103 Ohio App.3d at 315; State v. Combs (1994), 100 Ohio App.3d 90, 105.
Finally, Loza argues that his trial counsel was ineffective for failing to present mitigating evidence from Loza's family. In support of this argument, Loza submitted affidavits from his grandmother, sister, and brother. However, the record reveals that Loza's mother and two of his other sisters testified about Loza's family history and general character during the mitigation phase of his trial. Since the affidavits submitted by Loza are merely cumulative to the evidence presented at trial, he has failed to establish ineffective assistance of counsel. See Lawson at 315; Combs at 105. Accordingly, Loza's claims of ineffective assistance of counsel are without merit, and his second assignment of error is overruled.
In his third assignment of error, Loza contends that the trial court erred by dismissing the third, sixth, and tenth claims for relief in his petition for postconviction relief. In his sixth claim for relief, Loza alleged that he was selectively prosecuted because of his race. In his tenth claim for relief, Loza alleged that the death penalty is disproportionately imposed against defendants who are racial minorities and/or those defendants accused of killing white victims. In his third claim for relief, Loza alleged that he was denied his constitutional right to have a jury chosen from a fair cross-section of the community.
In his sixth claim for relief, Loza argued that the trial court erred by failing to find that the Butler County Prosecutor's decision to prosecute him for murder was based upon his Hispanic race. A presumption of regularity supports prosecutorial decisions and unless there is clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties. United States v. Armstrong (1996), U.S., 116 S.Ct. 1480, 1486. If a prosecutor has probable cause to believe that an accused committed an offense, the decision whether to prosecute, and what charges to file or bring before a grand jury, generally rests entirely within the prosecutor's discretion. Id. However, pursuant to the equal protection component of the Due Process Clause of theFifth Amendment, a prosector's decision whether to prosecute may not be based upon "an unjustifiable standard such as race, religion, or other arbitrary classification." Id. In order to establish a claim of selective prosecution, a defendant must show that a prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." Id. at 1487, quoting Oyler v. Boles (1962), 368 U.S. 448, 456, 82 S.Ct. 501. In a race case, a defendant must show that similarly situated individuals of a different race were not prosecuted. Id.
Loza argues that since Jackson, who is Caucasian, was similarly situated and not prosecuted for murder, he has established a claim of selective prosecution. However, unlike Loza, Jackson was a juvenile at the time that the murders were committed. Further, since the amount of evidence implicating Loza was significant and substantial, see Loza, 71 Ohio St.3d at 69, there was a race-neutral explanation for the prosecutor's decision. See State v. Keene (Sept. 20, 1996), Montgomery App. No. 14375, unreported. Therefore, Loza failed to show that the decision to prosecute him for murder was based upon his race and the trial court properly dismissed his sixth claim for relief.
In his tenth claim for relief, Loza argued that the death penalty is disproportionately imposed against defendants who are racial minorities and/or those defendants accused of killing white victims. In rejecting similar arguments, the United States and Ohio Supreme Courts have held that a defendant must show that racial considerations affected the sentencing process in his individual case. McCleskey v. Kemp (1987), 481 U.S. 279,107 S.Ct. 1756; State v. Steffen (1987), 31 Ohio St.3d 111. Like the defendants in McCleskey and Steffen, Loza has only offered statistics in support of his argument, and statistics are insufficient to show that race affected the sentencing process in his case. See McClesky at 297, 1770; Steffen at 124-125. Therefore, the trial court properly dismissed Loza's tenth claim for relief.
In his third claim for relief, Loza argued that he was denied his constitutional right to have a jury chosen from a fair crosssection of the community. Specifically, Loza argued that racial minorities are excluded from capital juries in Butler County, Ohio. In support of his argument, Loza submitted the affidavits of three defense attorneys. J. Gregory Howard and Michael D. Shanks, who served as trial counsel for Loza, stated that there were not any Hispanics or African-Americans on Loza's jury. In addition, Howard stated that he represented Michael Benge in a capital trial and there were not any Hispanics or African-Americans on Benge's jury. Shanks stated that he represented Kevin Watson and Von Clark Davis in capital trials and there were not any Hispanics or AfricanAmericans on their panels. Loza also submitted the affidavit of defense attorney Craig Hedric, who stated that he represented Clifford Williams in a capital trial and there were not any Hispanics or African-Americans on his panel. Howard, Shanks, and Hedric further stated that a minority rarely sits on a jury in a criminal case.
The Sixth and Fourteenth Amendments to the United States Constitution guarantee a right to a jury chosen from a fair crosssection of the community. Taylor v. Louisiana (1975),419 U.S. 522, 528, 95 S.Ct. 692; State v. Puente (1982), 69 Ohio St.2d 136,138. "Defendants are not entitled to a jury of any particular composition * * * but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Taylor at 538. Thus, in order to demonstrate that there has been a violation of the fair cross-section requirement, a defendant must show:
 (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process.
Duren v. Missouri (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668.
The affidavits submitted by Loza do not establish that the representation of Hispanics and African-Americans on Butler County juries is not fair and reasonable in relation to the number of Hispanics and African-Americans in Butler County. The affidavits only cite a few examples where African-Americans and Hispanics have not served in capital trials and many of the examples do not clearly state whether the trial involved a three-judge panel or a jury panel. Further, the examples are not sufficient to establish under representation because, according to statistics provided by Loza, the total minority population of Butler County is only 4.5% and the Hispanic population of Butler County is only .5%.
Even assuming that Loza could show Hispanics and AfricanAmericans were under represented on Butler County juries, Loza has made absolutely no showing that this under representation was due to the systematic exclusion of these groups in the jury-selection process. In fact, the trial court noted that Butler County uses voter registration lists to select jurors and this method of selection has consistently been upheld by the Ohio Supreme Court. See State v. Roe (1989), 41 Ohio St.3d 18; State v. Esparza (1988), 39 Ohio St.3d 8, 13. Therefore, Loza has failed to show that he was denied his constitutional right to have a jury chosen from a fair cross-section of the community and the trial court properly dismissed his third claim for relief. Accordingly, since we found that the trial court properly dismissed Loza's third, sixth, and tenth claims for relief, Loza's third assignment of error is overruled.
In his fourth assignment of error, Loza contends that the trial court erred by denying his motion for discovery to pursue his claim of selective prosecution based upon race. In order to obtain discovery on a selective prosecution claim, a defendant must produce some evidence that similarly situated members of other races were treated differently. Armstrong, U.S.,116 S.Ct. at 1489. The Supreme Court reasoned that "the justifications for a rigorous standard for the elements of a selective prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." Armstrong at 1488. As discussed with respect to Loza's third assignment of error, he has not produced evidence that similarly situated members of other races were treated differently. Accordingly, Loza was not entitled to discovery and his fourth assignment of error is overruled.
In his fifth assignment of error, Loza contends that the trial court erred by denying relief where the prosecutor used false evidence to obtain his conviction. In particular, Loza claims that Jackson falsely testified that Loza confessed to her that he killed Jackson's family. In support of his claim, Loza submitted his own affidavit where he denied committing the murders. In addition, Loza submitted copies of several letters that he wrote to Jackson after his trial and conviction. In the letters, Loza indicates that he did not commit the murders.
Failure of a prosecutor to correct testimony, which he knows to be false, denies a criminal defendant due process of law. Moore v. Illinois (1972), 408 U.S. 798, 92 S.Ct. 2562; Napue v. Illinois (1959), 360 U.S. 264, 79 S.Ct. 1173. Loza's affidavit and letters are conclusory and self-serving materials that do not set forth operative facts which demonstrate that Jackson testified falsely. Further, Loza has provided absolutely no evidence that the prosecution knowingly used false evidence to obtain his conviction. Therefore, since Loza failed to submit evidentiary materials setting forth sufficient operative facts to demonstrate substantive grounds for relief, the trial court properly dismissed this claim for relief without a hearing. See Jackson, 64 Ohio St.2d at 110. Accordingly, Loza's fifth assignment of error is overruled.
In his sixth assignment of error, Loza contends that death by means of electrocution constitutes cruel and unusual punishment. It is well-established that death by electrocution is not cruel and unusual punishment. See, e.g., Louisiana ex rel. Francis v. Resweber (1947), 329 U.S. 459, 67 S.Ct. 374; State v. Coleman (1989), 45 Ohio St.3d 298, 308. Accordingly, this assignment lacks merit and Loza's sixth assignment of error is overruled.
In his seventh assignment of error, Loza contends that the trial court erred by dismissing his petition because he submitted evidence of "actual innocence." Loza's evidence of "actual innocence" consists of the affidavit and letters that were discussed with respect to his fifth assignment of error. Loza cites Herrera v. Collins (1993), 506 U.S. 390, 113 S.Ct. 853, in support of his contention that evidence of "actual innocence" is a constitutional claim that entitles him to postconviction relief.
In Herrera, a majority of Supreme Court Justices, in separately filed opinions both concurring in and dissenting from the Court's decision, indicated that the execution of an innocent person would constitute a violation of rights conferred by theEighth and Fourteenth Amendments. Herrera, 506 U.S. at 419,429-436, 113 S.Ct. at 870, 875-878 (O'Connor, J., concurring, joined by Kennedy, J.; White, J., concurring; Blackmun, J., dissenting, joined by Stevens and Souter, JJ.). However, the Supreme Court held that a petitioner was not entitled to federal habeas corpus relief because "a claim of `actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera at506 U.S. at 404, 113 S.Ct. at 862.
In State v. Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported, the First District Court of Appeals interpreted the Supreme Court's holding in Herrera and held that a claim of "actual innocence" based on newly discovered evidence does not constitute a substantive ground for postconviction relief. The First District reasoned that a petitioner was not entitled to postconviction relief unless he showed a violation of rights that were constitutional in dimension, which occurred at the time that the petitioner was tried and convicted. Campbell at 6, citing Powell, 90 Ohio App.3d at 264. The First District then concluded that the petitioner was not entitled to postconviction relief because actual innocence "does not, standing alone, demonstrate a constitutional violation in the proceedings that actually resulted in the conviction." Campbell at 8.
We agree with the reasoning of the First District and find that Loza's claim of "actual innocence" does not constitute a substantive ground for postconviction relief. Additionally, we note that Loza's self-serving affidavit and letters are conclusory and do not set forth any operative facts that demonstrate his "actual innocence." Accordingly, the trial court properly dismissed this claim for relief without a hearing and Loza's seventh assignment of error is overruled.
In his eighth assignment of error, Loza contends that the trial court erred by denying his general request for discovery, which was filed at the same time as his petition for postconviction relief. R.C. 2953.21(C) expressly provides that the initial determination of whether a postconviction petition states substantive grounds for relief is to be made based upon the petition and any supporting affidavits, together with the case files and records. Therefore, a petitioner for postconviction relief is not entitled to discovery during the initial stages of a postconviction proceeding. State v. Benner (Aug. 27, 1997), Summit App. No. 18094, unreported; State v. Campbell (Jan. 8, 1997), Hamilton App. No. C-950746, unreported; State v. Wickline (June 28, 1994), Franklin App. No. 93APA10-1411, unreported.
After reviewing Loza's petition and his supporting affidavits, together with the case files and records, the trial court determined that Loza's petition did not state substantive grounds for relief and dismissed the petition without a hearing. Since Loza's petition never proceeded past the initial stages of a postconviction proceeding, Loza was not entitled to discovery. Accordingly, the trial court did not err by denying Loza's request for discovery and his eighth assignment of error is overruled.
In his ninth assignment of error, Loza contends that R.C.2953.21 and Ohio's postconviction proceedings are unconstitutional because they do not provide an adequate corrective process. A review of the record reveals that Loza did not assert this claim in his petition for postconviction relief and failed to raise this issue at the trial court level. Generally, an appellate court will not consider an issue regarding the constitutionality of a statute where the issue was not raised in the trial court. State v. Awan (1986), 22 Ohio St.3d 120, syllabus. Although the "waiver doctrine" is discretionary, see In re M.D. (1988), 38 Ohio St.3d 149, the present case does not present plain error or special circumstances that warrant an exception to the waiver doctrine. A constitutional challenge to R.C. 2953.21 has previously been found to be waived where a postconviction petitioner failed to raise the issue in the trial court. State v. Benner (Apr. 27, 1997), Summit App. No. 18094, unreported. Further, R.C. 2953.21
has been found to be constitutional. State v. Skenlar (1991),71 Ohio App.3d 444, 449. Accordingly, Loza's ninth assignment of error is overruled.
In his twelfth assignment of error, Loza contends that the trial court erred by dismissing his petition without holding an evidentiary hearing. As previously discussed, a petitioner is only entitled to a hearing if the court determines that there are substantive grounds for relief. R.C. 2953.21(C). We have reviewed Loza's claims for relief and found that the trial court properly dismissed several of his claims without a hearing because he failed to submit evidentiary materials that demonstrated substantive grounds for relief. See Jackson,64 Ohio St.2d at 110. In addition, we have found that the trial court properly dismissed his remaining claims without a hearing based upon the res judicata doctrine. See Perry, 10 Ohio St.2d 175 at paragraph nine of the syllabus. Accordingly, the trial court properly dismissed Loza's petition without a hearing, and his twelfth assignment of error is overruled.
In his thirteenth assignment of error, Loza contends that he is entitled to postconviction relief because of the "cumulative errors" that occurred in his case. Pursuant to the doctrine of cumulative error, a conviction will be reversed where the cumulative effect of errors deprives a defendant of his constitutional right to a fair trial even though each individual error does not constitute cause for reversal. State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. Since we have not found any instances of error, Loza's claim of "cumulative error" is without merit. State v. Garner (1995),74 Ohio St.3d 49, 64. Accordingly, Loza's thirteenth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] Article 36(1)(b) of the Vienna Convention provides:
 If he so requests, the competent authorities of the receiving state shall, without delay, inform the consular post of the sending state if, within its consular district, a national of that state is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph.
[2] The Supremacy Clause of the United States Constitution in relevant part:
 "This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2.
[3] At the time the petition was filed, R.C. 2953.21(C) provided relevant part:
 Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.
[4] R.C. 2953.21(D) provides in relevant part:
 Within ten days after the docketing of the petition, or within such further time as the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion.
[5] Although Loza's trial counsel did not file a motion to suppress Loza's confession on the grounds that it was involuntary, this issue was raised and addressed on direct appeal. This court held that the trial court did not commit plain error in failing to suppress Loza's confession as involuntary. Loza, Butler App. No. CA91-11-198 at 16-20. The Ohio Supreme Court found that Loza's confession was voluntarily given. Loza,71 Ohio St.3d at 66-68.