DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from the Huron County Court of Common Pleas wherein appellant, Lawrence Holder, was convicted of aggravated murder and aggravated robbery. Because we conclude that the weight and sufficiency of the evidence support the convictions, we affirm.
On March 12, 1999, store clerk Clarence Jacocks was shot and killed during a robbery at "Papa Johnny's" carry-out in Mansfield, Ohio. Appellant was indicted in the Richland County Court of Common Pleas for the murder and robbery with a firearm specification. On September 24, 1999, the court granted appellant's motion for a change of venue due to prejudicial pretrial publicity. The case was ordered transferred to the Huron County Court of Common Pleas for trial. On January 28, 2000, a jury found appellant guilty on both counts. He was sentenced to life in prison. Appellant now appeals setting forth the following assignments of error:
 "Assignment of Error No. 1: Appellant's conviction for Aggravated Murder should be reversed because the State introduced not one scintilla of direct evidence or any indirect evidence from which the Jury could infer that Appellant purposely killed the victim or purposely fired the weapon hence depriving the state of proof of an essential element of the crime.
 "Assignment of Error No. 2: Appellant's conviction for Aggravated murder should be reversed because it is against the manifest weight of the evidence admitted during the trial."
Appellant's trial commenced on January 25, 2000. Shawn Madison testified that he was working at Papa Johnny's with Clarence Jacocks on March 12, 1999. Madison testified that he was behind the counter with Jacocks when he accidentally dropped a bag of money. Madison was on the floor retrieving the money when he heard a customer come into the store. The customer, a man, asked Jacocks for cigars. As Madison was about to get up off the floor, the man ran behind the counter with a gun. Madison heard a gunshot and watched as Jacocks fell face down on the floor. The man then ordered Madison not to move and told another man with him to open the cash register. When the men could not open the cash register, they left. Madison testified that he never looked directly at the two men.
Inside the store, police found a bullet. They also obtained a videotape from the store's security camera which had recorded the robbery. On March 16, 1999, a .38 caliber pistol was found in a Mansfield parking lot. Ballistic tests showed that the bullet found at Papa Johnny's was fired from the pistol.
Corey Mack testified that he was living in Mansfield in March 1999. On March 11, 1999, he saw his uncle, Renardo Minor, in a Mansfield bar. Minor had driven from his home in Atlanta, Georgia accompanied by Ronald Leaks and appellant. The three men spent the night at Mack's apartment.
Lavelle Snelling testified that on March 12, 1999, he was working in a Mansfield record store. On that day, a man he knew to be Renardo Minor stopped by throughout the day looking for the owner of the record store. The last time Minor stopped in at the end of the day, he was accompanied by two men. The next day, Snelling saw the videotape of the robbery on television. He testified that he recognized the perpetrators as the two men who were with Minor in the record store. At trial, Snelling identified appellant as one of the two men.
Police received other tips after the videotape of the robbery was shown on local television. One of the tips led police to an Atlanta, Georgia car rental company. Angela Seagraves testified that in March 1999, she was working at the Federal Rent-a-Car agency in Atlanta when she rented a car to Andrea Holder. Holder listed Renardo Minor as an additional driver. She also listed Terry Worthens as a reference.
Worthens, a resident of Atlanta, Georgia, testified that he was contacted by the Mansfield, Ohio police in April 1999. They showed him the videotape of the Papa Johnny's robbery. Worthens identified the two perpetrators as Atlanta residents, Ronald Leaks and appellant.
Appellant testified that on March 12, 1999, he entered Papa Johnny's armed with a gun intending to commit a robbery. Appellant testified that the gun accidentally went off during a struggle with Jacocks. Appellant testified that he, at no time, intended to commit a murder.
In his two assignments of error, appellant contends his conviction for aggravated murder is against the manifest weight of the evidence. Specifically, appellant contends the state failed to prove he "purposefully" killed Jacocks.
Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only if we conclude that the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
The elements of aggravated murder, a violation of R.C. 2903.01(B), are as follows:
 "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnaping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.
 "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
The Ohio Supreme Court has held that "where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill." State v. Esparza (1988), 39 Ohio St.3d 8,14, citing State v. Clark (1978), 55 Ohio St.2d 257, syllabus; State v.Johnson (1978), 56 Ohio St.2d 35; State v. Jester (1987),32 Ohio St.3d 147, 152.
The record shows that appellant entered Papa Johnny's on March 12, 1999 for the purpose of committing a robbery. He entered the carry-out carrying a loaded semi-automatic handgun which could only be fired, according to the state's ballistic expert, once the safety was disengaged and the trigger was pulled. Based on this evidence, we conclude that a homicide was a natural and probable consequence presumed to have been intended. We further conclude that there is no evidence that the jury lost its way or created a manifest miscarriage of justice in convicting appellant of aggravated murder. Appellant's two assignments of error are found not well-taken.
On consideration whereof, the court finds the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Huron County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., JUDGES CONCUR.