The STATE of Ohio, Appellee,

v.

CARTER, Appellant.

[Cite as *State v. Carter* (1996), 115 Ohio App.3d 770.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 94 C.A. 128.

Decided Nov. 25, 1996.

*James A. Philomena,* Mahoning County Prosecuting Attorney, and *Michele G. Cerni,* Assistant Prosecuting Attorney, for appellee.

*James S. Gentile,* for appellant.

GENE DONOFRIO, Judge.

Defendant-appellant, Derek Lloyd Carter, appeals from a judgment of the Mahoning County Court of Common Pleas after a trial by jury, whereby appellant was convicted on one count of murder, with a firearm specification.

On November 19, 1993, appellant was indicted on one count of murder, in violation of R.C. 2903.02, with a firearm specification, in the shooting death of Nick Carter. Appellant was also indicted on one count of felonious assault, with a firearm specification, regarding the shooting injury of Jerome Wright stemming from the same incident.

The felonious assault charge was subsequently dismissed due to insufficient evidence.

Trial to a jury began on June 27, 1994. At trial, it was established that, on October 22, 1993, a fight broke out in the parking lot of the McDonald's

restaurant located across the street from the Youngstown State University ("Y.S.U.") stadium after a football game between Wilson High School and East High School. It was established that the decedent, Nick Carter, had attended the football game with Damon Christian, Willie Green and Rashad Willis. Appellant had attended the game with Jamar Baty, Jason Baty and Mark Britt.

Damon Christian testified that, during the altercation, he saw Nick Carter run toward appellant. Christian further testified that he heard a shot and saw the fire from a gun being held by appellant. He further testified that he saw appellant shoot toward Nick's chest.

John Carl Turner was employed by McDonald's as a security officer and was in the parking lot on the night of the shooting. Turner testified that he saw groups of young adults arguing. He testified that he saw appellant, who was wearing a "reddish type of outfit," with a small weapon and further that he saw appellant raise his arm in a very quick motion and that he heard one to three shots go off. Turner further testified that he saw appellant look toward him, drop what he had in his hand and run. Turner then ran after appellant and, at one point, when the appellant turned toward him in a threatening manner, he fired one shot at appellant. He missed appellant, and appellant continued running. Appellant eventually fell and was then apprehended by a Y.S.U. campus police officer.

Richard Brooks, a janitor at Y.S.U., testified that, on the night of the shooting, he was looking down from the fourth floor of Y.S.U. stadium onto the parking lot of McDonald's when he saw someone wearing a burgundy jacket pull a gun and shoot. Brooks further testified that he heard three or five shots and that he then saw the person who had pulled the gun break out running. Brooks testified that he saw the person toss the gun, but he did not see any faces of the participants that evening.

Michael E. Roberts, from the Ohio Bureau of Criminal Investigations, testified that while the bullet taken from the decedent had similar general rifling numbers of lands and grooves to the bullet test-fired from the gun found at the scene, he could not conclusively state that the bullet taken from the decedent was fired from that gun.

As part of its case in chief, appellee also presented the testimony of a number of police officers involved in the investigation. Detectives John Perdue and Cosmo Santillo questioned appellant and obtained his written statement. Perdue's and Santillo's testimony established that appellant's rights had been read to him and that the appropriate waiver form had been executed. Appellant's statement was not read to the jury nor was it admitted into evidence. However, both of the officers testified as to the substance of appellant's statement. The officers testified that appellant admitted during the giving of his statement that he shot a .22 caliber weapon into the crowd on the day in question. During the

cross-examination of Det. Santillo, defense counsel challenged the accuracy of the transcription of appellant's statement and also drew attention to the fact that appellant only stated that he had fired the gun into the ground or into the crowd, not toward Nick Carter.

Appellant presented the testimony of three witnesses, Jamar Baty, Jerome Baty, and Mark Britt. Their testimony was to the effect that Nick Carter had threatened to hurt or shoot them on the night of the incident. Mark Britt testified that he had seen a gun at the waistline of Jerome Wright. However, Britt acknowledged on cross-examination that he did not see Nick Carter with a gun. Jason Baty testified that appellant didn't start the fight and that it was Nick Carter who was the aggressor. In addition, Baty testified that he heard at least sixteen shots on the night in question.

Appellant was subsequently found guilty of the murder charge as well as of the firearm specification. He then filed the instant appeal.

Appellant has raised two assignments of error. In the first, he argues:

"The court erred in stating that it would charge the jury on the offenses of voluntary and involuntary manslaughter and then failed to do so constituting error and/or plain error and denying the defendant a fair trial."

Appellant argues that the court clearly stated at the conclusion of the evidence that it was prepared to charge the jury on the offenses of murder, voluntary manslaughter, and involuntary manslaughter. However, when the charge was read to the jury the next day, the court only instructed the jury on the charge of murder. Appellant's trial counsel did not object to the court's omission of the charges on voluntary and involuntary manslaughter.

Appellant argues that he was entitled to have an instruction on voluntary and involuntary manslaughter. Appellant cites *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, wherein the Ohio Supreme Court held that after arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the trier of fact. Appellant further argues that Ohio courts have repeatedly held that it is prejudicial and reversible error for a trial court to refuse an instruction on lesser included offenses if the evidence could reasonably support a verdict on such offenses, citing *State v. Kilby* (1977), 50 Ohio St.2d 21, 4 O.O.3d 80, 361 N.E.2d 1336, and *State v. Nolton* (1969), 19 Ohio St.2d 133, 48 O.O.2d 119, 249 N.E.2d 797.

Since appellant did not object at the time the instructions were given, we review the instructions for plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332.

In *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, the court held that a charge on a lesser included or inferior degree offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser offense. See, also, *State v. Shane* (1992), 63 Ohio St.3d 630, 590 N.E.2d 272; *State v. Tyler* (1990), 50 Ohio St.3d 24, 36, 553 N.E.2d 576, 591–592.

The murder statute, R.C. 2903.02(A), provides that "[n]o person shall purposely cause the death of another." R.C. 2901.22(A) discusses the element of purposefulness:

"A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against the conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

In *State v. Esparza* (1988), 39 Ohio St.3d 8, 14, 529 N.E.2d 192, 199, the Ohio Supreme Court held:

"It is well-established that 'where an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended. Such evidence is sufficient to allow a jury to find a purposeful intent to kill.' "

While *Esparza* dealt with the conviction of a defendant for aggravated murder for a death occurring during an aggravated robbery, its rationale is equally applicable here. Further, in *State v. Smith* (1993), 89 Ohio App.3d 497, 624 N.E.2d 1114, the court held that evidence that the defendant shot a gun into a crowd less than twenty feet away was sufficient to establish the purposefulness element of R.C. 2903.02(A).

The voluntary manslaughter statute, R.C. 2903.03, provides:

"(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

In order to warrant an instruction on voluntary manslaughter, there must be sufficient evidence that the defendant acted under the influence of sudden passion or in a sudden fit of rage caused by the victim which was reasonably sufficient to incite the defendant into using deadly force. See *State v. Shane*, 63 Ohio St.3d at 634, 590 N.E.2d at 276; *State v. Collins* (1994), 97 Ohio App.3d 438, 445, 646 N.E.2d 1142, 1146–1147. For provocation to be reasonably sufficient to incite the defendant to use deadly force, it must be sufficient to arouse the passions of an ordinary person beyond his or her control. *Shane*, at 635, 590 N.E.2d at 276–277.

In most situations, words alone will not constitute reasonably sufficient provocation. *Id.* at 637, 590 N.E.2d at 278.

 The involuntary manslaughter statute, R.C. 2903.04(A) and (B), provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit" a felony or a misdemeanor. In a murder case, where the evidence at trial fails to demonstrate that a separate misdemeanor or felony offense was being committed at the time the victim was shot, no jury instruction on the lesser offense of involuntary manslaughter is warranted. See *State v. Clark* (1995), 101 Ohio App.3d 389, 420, 655 N.E.2d 795, 815.

In the instant case, we cannot say that the evidence presented at trial would have both reasonably supported an acquittal on the crime charged and a conviction on either of the lesser offenses. Two witnesses, Damon Christian and John Turner, testified that they saw appellant shoot Nick Carter. Based upon the circumstances surrounding the shooting, the fact that appellant shot the gun into the crowd and that he was seen dropping the gun leads us to conclude that the evidence would not have reasonably supported acquittal on the crime charged.

Further, we find that there was no evidence that appellant acted under the influence of passion or in a sudden fit of rage brought on by serious provocation by the victim reasonably sufficient to incite appellant into using deadly force. While appellant's witnesses testified that Nick Carter had been the aggressor, there was no evidence that Nick Carter was armed or that anyone ever thought they saw him with a weapon. Also, there was no evidence that Nick Carter actually attempted to inflict any physical harm on appellant.

Finally, there was no evidence that Nick Carter was shot while appellant was committing a felony or a misdemeanor.

Based upon the foregoing, we find that there was no plain error in the failure to charge the jury on involuntary and voluntary manslaughter. The first assignment of error is without merit.

In the second assignment of error, appellant argues:

"Defendant's trial counsel was ineffective and the cumulative effect of his errors resulted in a denial of the defendant's constitutional right to a fair trial."

Under the facts as established at trial, appellant argues that it is clear that the killing took place under brawl-like conditions. Appellant argues that it is clear that available defenses were self-defense or a trial strategy which would result in an instruction to the jury on a lesser included offense.

Appellant argues that his counsel failed to file a motion to suppress his statement to the police. While acknowledging that this does not necessarily

constitute ineffective assistance of counsel, appellant argues that it does so in combination with other errors of counsel.

Appellant argues that, during the course of trial, defense counsel allowed Detectives Perdue and Santillo to testify as to the contents of appellant's statement. Appellant argues that his counsel knew that the statement was coming into evidence and that the only proper manner to present the statement to the jury was a verbatim reading of it, which defense counsel failed to request. Appellant argues that if the statement had been read to the jury as a whole, appellant's entire version of the events would have been heard by the jury, including his statement that he had not meant to kill the decedent and that he had seen Jerome Wright with a gun.

Appellant also argues that his trial counsel should have called appellant to testify on his own behalf. Appellant argues that with parts of his statement to the police having already been heard by the jury, the only logical thing to do would have been to call appellant to the stand in an effort to establish a self-defense or nonpurposeful-killing argument.

In order to establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. The "reasonable probability" of which *Strickland* speaks is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The question thus becomes whether counsel's errors were serious enough to deprive the defendant of a proceeding the result of which was reliable, that is, "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2052, 80 L.Ed.2d at 692–693.

■ Applying the *Strickland* test to the instant case, we first note that appellant had the opportunity to be a witness in his own defense. Without any indication in the record to the contrary, we must assume that appellant knowingly exercised his privilege against self-incrimination. We agree with appellee's argument that what appellant would have testified to at trial is pure speculation at this point.

Further, there are a myriad of reasons which could have prompted the tactical decision of counsel not to call appellant to testify and not to request that the whole of appellant's statement be read into the record. We refuse to speculate as

to those reasons. Further, we cannot say that appellant was prejudiced by these tactical decisions, given trial counsel's cross-examination of Det. Santillo.

■ Finally, we do not agree with appellant's assertions that the only defenses available to him were self-defense or a trial strategy which would have resulted in an instruction on a lesser included offense. A reading of all testimony given in the case leads us to conclude that appellant's trial counsel's strategy was to seek a total acquittal for his client. The testimony of appellant's three witnesses and trial counsel's cross-examination of appellee's witnesses were to the effect that a number of people were shooting guns on the night in question and that any one of them could have fired the shot that killed Nick Carter. In particular, we note that trial counsel continually emphasized during trial that there was no conclusive evidence that bullets from appellant's gun matched the bullets taken from the victim.

While hindsight obviously reveals that this strategy was ineffective, we adhere to the principle established and followed by the Ohio Supreme Court that when trial counsel chooses a strategy which later proves to be ineffective, the fact that another or better strategy was available does not amount to a breach of an essential duty to his client. See *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 37–38, 402 N.E.2d 1189, 1192.

We find that appellant received the effective assistance of counsel as guaranteed him by the Constitution. Appellant's second assignment of error is without merit.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

JOSEPH E. O'NEILL, P.J., and COX, JJ., concur.