[Cite as *State v. Williamson*, 2011-Ohio-4095.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95732**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CORTEZ WILLIAMSON

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-534287

**BEFORE:** Blackmon, J., Kilbane, A.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** August 18, 2011

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: John Hanley
Blaise D. Thomas
Asst. County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

**{¶ 1}** Appellant Cortez Williamson ("Williamson") appeals his conviction

for murder and assigns the following four errors for our review:

> **"I.  The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against appellant."**

> **"II.   Appellant's convictions are against the manifest weight of the evidence."**

> **"III.   The trial court erred when it overruled a motion to suppress statement where appellant exercised his right to counsel while being interrogated by homicide detectives**

**but was continued to be interrogated and the statements used against him in violation of Section 10, Article I, of the Ohio Constitution and Fifth, Sixth, and Fourteenth Amendments.”**

**“IV. The trial court erred in forcing appellant to choose between the jury instruction of self-defense and the lesser-included offense of voluntary manslaughter in violation of Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments.”**

{¶ 2} Having reviewed the record and pertinent law, we affirm Williamson's conviction. The apposite facts follow.

{¶ 3} The Cuyahoga County Grand Jury indicted Williamson for one count each of murder, discharge of a firearm on or near a prohibited premises, tampering with evidence, and carrying a concealed weapon. He was also indicted for having a weapon while under disability to which he pled separately.

{¶ 4} Prior to trial, Williamson filed a motion to suppress his statement to police, contending the police violated his right to an attorney by continuing to question him after he requested an attorney. The trial court denied the motion to suppress, and the matter proceeded to a jury trial.

{¶ 5} At trial, Williamson did not dispute that he shot the victim. He contended that he either acted in self-defense or as a result of sudden passion to support a voluntary manslaughter charge.

{¶ 6} On January 27, 2009, at around 2:30 p.m., Dexter McWorther ("Dexter") was shot and killed outside of Joe D's Third World Lounge located

at East 135th Street and Miles Avenue. Prior to closing time, there was a disturbance near the entrance of the bar. Williamson had pulled off Antoinette Jefferson's ("Antoinette") hair extension. Enraged, Antoinette punched Williamson several times in the face; Williamson responded by punching her in the face. A crowd gathered to separate the two. Antoinette was eventually carried away by a male friend.

{¶ 7} Jerome Fuller ("Jerome"), Sheldon Starling ("Sheldon"), and Dexter were leaving the bar at the time of the altercation. As Jerome walked past Williamson, he began calling Jerome names. Jerome had never met Williamson. Williamson's group then began yelling at both Jerome and Sheldon. Sheldon attempted to shake Williamson's hand to diffuse the situation, but Williamson slapped it away. Dexter then approached to inquire what was going on.

{¶ 8} Williamson swung at Sheldon, and he responded by pushing him back. Williamson stumbled back and again tried to swing at Sheldon, who again pushed him back. Sheldon stated that because of the way Williamson was stumbling, he appeared to be intoxicated. The second time Sheldon pushed him, Williamson smiled at him and pulled a pistol out of his waistband. Everyone ran. At least four shots were fired. As Sheldon was running, Dexter yelled to him that he was hit. Sheldon pulled Dexter behind a car and waited with him for an ambulance. Dexter later died at the

hospital. According to Jerome and Sheldon, no one else but Williamson had a gun. They testified that no one had threatened Williamson and that there was no reason for him to start shooting.

{¶ 9} Williamson testified at trial. He admitted that he brought his gun to the bar and that he fired the shots that killed Dexter. He admitted being intoxicated that night and that his recollection of events was "fuzzy." He claimed he fired his gun because the crowd was "running up on me" and he was "scared" and "snapped." He also admitted he fled the scene and threw his gun into Lake Erie. He was arrested a week later when police discovered him hiding in a hotel.

{¶ 10} The jury found Williamson guilty of murder, discharging a firearm near a prohibited premises, tampering with evidence, and carrying a concealed weapon, along with the accompanying firearm specifications. The trial court sentenced him to a total of 15 years to life in prison.

## Insufficient Evidence

{¶ 11} In his first assigned error, Williamson argues there was insufficient evidence to support his conviction for murder.

{¶ 12} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same

analysis. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

{¶ **13**} In analyzing the sufficiency issue, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965.

{¶ **14**} Pursuant to R.C. 2903.02(A), a conviction for murder requires the state prove that Williamson "purposely caused the death of another." Williamson argues that he did not purposely kill Dexter but acted out in self-defense. The affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that his or her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger. *State v. Williford* (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279.

{¶ **15**} Williamson claims the evidence shows that he was surrounded by numerous males who were threatening him; therefore, he acted in

self-defense. Although Williamson and his brother testified that the men were threatening him, the state's witnesses testified that no one was threatening Williamson. In order to assert the defense of self-defense, Williamson had to prove that he was not the aggressor. The state's evidence showed that the group was attempting to calm Williamson who was upset due to the altercation he had with Antoinette. In fact, both Sheldon and Jerome testified that Williamson was acting aggressively toward them when they attempted to calm him. According to Sheldon, Williamson attempted to punch him several times. Therefore, the evidence supported the state's contention that Williamson was the aggressor. Additionally, no one else had a weapon besides Williamson; therefore, there was no evidence he was in danger of imminent death or great bodily harm that would justify the use of the gun.

{¶ 16} The evidence also does not support his claim that his actions constituted voluntary manslaughter. The elements of voluntary manslaughter are: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." R.C. 2903.03(A).

{¶ 17} Williamson argues that he reacted because he was angry due to being pushed and hit. The only person who had struck Williamson was

Antoinette who punched Williamson several times because he pulled off her hair extension. The evidence showed Antoinette was 5'2" and 115 pounds and that Williamson was 6'6" and 250 pounds. Thus, although Antoinette punched him several times, the size difference between them does not support his contention that he was provoked to the extent that the use of deadly force was reasonable.

{¶ 18} There was evidence that Sheldon pushed Williamson several times but it was due to Williamson's attempting to punch him. These circumstances would not be enough for a reasonable person to become enraged to the point of using deadly force. There was no evidence that anyone besides Williamson had a weapon. Although Williamson contends that the murder weapon was not recovered, he admitted at trial that he threw the gun into Lake Erie.

{¶ 19} Although Williamson may not have intended to kill Dexter, courts have previously held that evidence that the defendant shot a gun into a crowd of people was sufficient to establish the purposefulness element of R.C. 2903.02(A). *State v. Carter* (1996), 115 Ohio App.3d 770, 686 N.E.2d 329; *State v. Smith* (1993), 89 Ohio App.3d 497, 624 N.E.2d 1114; *State v. Cottrell,* Cuyahoga App. No. 81356, 2003-Ohio-5806. Accordingly, Williamson's first assigned error is overruled.

## Manifest Weight of the Evidence

{¶ 20} In his second assigned error, Williamson argues his conviction for murder was against the manifest weight of the evidence.

{¶ 21} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541.**

**'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."**

{¶ 22} Williamson contends that the jury simply felt compelled to find him guilty because he shot the gun and no other defendants were on trial. As we stated above, evidence was presented showing that Williamson possessed the requisite intent to commit murder by firing the gun several times into the crowd of people. Accordingly, Williamson's second assigned error is overruled.

## Motion to Suppress

{¶ 23} In his third assigned error, Williamson argues that the statements he made to police should have been suppressed because detectives continued to question him in spite of his request for an attorney.

{¶ 24} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. On

review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether the applicable legal standard has been met. Id.

{¶ 25} The detectives' questioning of Williamson was videotaped; the video was played for the trial court at the suppression hearing. Our review of the video indicates that the detectives recited Williamson's *Miranda* rights prior to questioning him. Williamson stated that he understood the rights as explained to him. The detectives then prompted him to tell them what happened. For approximately eight minutes, Williamson does not say anything. The following colloquy then occurred:

{¶ 26} Williamson: "I'm going to need a lawyer ain't I?"

{¶ 27} Detective: "Pardon?"

{¶ 28} Williamson: "I'm going to need a lawyer."

{¶ 29} Detective: "You're going to need a lawyer?"

{¶ 30} Williamson: "Am I?"

{¶ 31} The detectives then told Williamson that he had a right to an attorney to be with him, but that the detectives could not give him legal advice. Williamson then inquired if he would be able to talk with a lawyer

that day. The detective explained that because it was the weekend, he could not get a lawyer until Monday and would have to spend the weekend in jail unless he privately retained a lawyer. The detective resumed questioning and Williamson, after several more minutes, admitted firing the gun.

**{¶ 32}** The trial court concluded that Williamson's inquiry regarding his right to an attorney did not amount to an unequivocal request for an attorney. We agree. "A request for counsel must be clear and unequivocal." *Davis v. United States* (1994), 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362. "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her Miranda rights." *Berghuis v. Thompkins* (2010), ____ U.S. ____, 130 S.Ct. 2250, 2259-60, 176 L.Ed.2d 1098, citing *Davis* at 459. Whether a suspect invoked his or her right to counsel is a question that must be examined "not in isolation but in context." *State v. Murphy*, 91 Ohio St.3d 516, 520-21, 2001-Ohio-112, 747 N.E.2d 765.

**{¶ 33}** Here, a review of the video shows that Williamson was equivocal in discussing his need for an attorney. He never said he wanted an attorney. Instead, he questioned whether he needed an attorney. "[A] reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be

invoking the right to counsel * * * does not require the cessation of questioning." *Davis* at 459. Williamson's statement, "I'm going to need a lawyer, ain't I?" and inquiry regarding when a lawyer could be available, did not constitute unambiguous requests for an attorney. He might have been thinking about requesting an attorney, but he did not do so.

{¶ 34} In fact, the U.S. Supreme Court in *Davis* found the similar statement, "Maybe I should talk to a lawyer," was not an unambiguous request for counsel. See, also, *State v. Zuffino*, 9th Dist. No. 21514, 2003-Ohio-7202 (statements, "I think I need a lawyer," and "Maybe I should talk to a lawyer," and "I think that I would like an attorney" were deemed too ambiguous to constitute requests for an attorney); *State v. Knight*, 2d Dist. No. 04-CA-35, 2008-Ohio-4926 (defendant's inquiry "Well, can I talk to my lawyer then if there is something wrong like that? Do I need one or something?" held to be equivocal requests for counsel); *State v. Simmon*, Cuyahoga App. No. 86499, 2006-Ohio-4751 (defendant was only hypothesizing when he said he would speak to police "with a lawyer and all that stuff, too," and repeated upon further questioning, "I'm going to have to get a lawyer and all that stuff there, I mean," and failed to say yes when police asked "Oh, you * * * want to get a lawyer?"); *State v. Neal*, 2d Dist. Nos. 2000-CA-16 and 2000-CA-18, 2002-Ohio-6786 (statement, "'I probably ought to talk to an attorney' is similar to 'I think I need a lawyer' which Supreme Court in *Davis*, found ambiguous");

*State v. Curtis*, 10th Dist. No. 05AP-795, 2006-Ohio-4230 (defendant's question, "Can I have a public defender?" deemed ambiguous because he failed to request an attorney after detective explained he could have a public defender if he could not afford to retain an attorney.) Accordingly, Williamson's third assigned error is overruled.

## Jury Instruction

**{¶ 35}** In his fourth assigned error, Williamson argues the trial court erred by refusing to instruct the jury on self-defense.

**{¶ 36}** When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested instruction or giving an instruction constituted an abuse of discretion under the facts and circumstances of the case. See *State v. Wolons* (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. The trial court did not abuse its discretion by ordering defense counsel to choose between an instruction on voluntary manslaughter and self-defense. This court has previously held that an instruction on voluntary manslaughter and self-defense is not possible because the two legal theories are incompatible. *State v. Loyed*, Cuyahoga App. No. 83075, 2004-Ohio-3961; *State v. Brown*, Cuyahoga App. No. 93007, 2010-Ohio-2460. As the court in *State v. Harris* (1998), 129 Ohio App.3d 527, 534-535, 718 N.E.2d 488, explained, voluntary manslaughter requires that the

defendant be under the influence of sudden passion or a fit of rage, while self-defense requires the defendant to be in fear for his own personal safety.

**{¶ 37}** Although Williamson claims a self-defense instruction was appropriate because he feared for his own personal safety, this fear does not constitute sudden passion or fit of rage as contemplated by the voluntary manslaughter statute. *State v. Mack* (1998), 82 Ohio St.3d 198, 201, 694 N.E.2d 1328 (upholding refusal to grant an aggravated assault instruction when defendant testified that he acted out of self-defense). See *State v. Tantarelli* (May 23, 1995), 10th Dist. No. 94APA11-1618 (testimony that defendant was dazed, confused, and scared was insufficient to show sudden passion or fit of rage); *State v. Thompson* (Feb. 23, 1993), 10th Dist. No. 92AP-1124 ("self defense on the one hand requires a showing of fear, whereas voluntary manslaughter requires rage.") Because counsel chose to request a voluntary manslaughter instruction, which required a showing of rage, the trial court properly denied his request to also give a self-defense instruction. Accordingly, Williamson's fourth assigned error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed,

any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, A.J., and
COLLEEN CONWAY COONEY, J., CONCUR